(C.D. 2708)

PALMAR IMPORT CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 13, 1966)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Charles P. Deem* and *Harvey A. Isaacs*, trial attorneys), for the defendant.

Before OLIVER, NICHOLS, and WATSON, Judges

WATSON, Judge: The merchandise in the case at bar consists of certain items described on the invoice as "13 T 150 Rubber Monkey—Material: Rubber." It was assessed for duty under paragraph 1513 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General

Agreement on Tariffs and Trade, T.D. 52739, and T.D. 52820, at the rate of 35 per centum ad valorem as toys. Plaintiff herein claims that the articles in question are properly classifiable under paragraph 1537 of the tariff act, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, and T.D. 53877, at the rate of 12½ per centum ad valorem as manufactures in chief value of india rubber.

The pertinent provisions of the statutes here under consideration are as follows:

Paragraph 1513 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, and T.D. 52820:

Toys, not specially provided for:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

　　Other (\* \* \*) _____ 35% ad val.

Paragraph 1537(b) of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, and T.D. 53877:

Manufactures of india rubber or gutta-percha, or of which these substances or either of them is the component material of chief value, not specially provided for (\* \* \*):

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

　　Other _____ 12½% ad val.

The record consists of the testimony of one witness called on behalf of the plaintiff and two exhibits. Plaintiff's exhibit 1 (R. 7) is a sample of the type of rubber monkey here imported, item number 13 T 150, being a monkey with a drum (R. 7). Plaintiff's illustrative exhibit 2 is a sample of a skeleton with moving arms, being item number 13 T 151 illustrating in such item another style of action in addition to that indicated by the use of plaintiff's exhibit 1. This latter article is not protested (R. 8).

The oral evidence in the case was given by Mr. S. Robert Benton, assistant buyer and general manager for Palmar Import Co., importer of toys, novelties, housewares, promotional merchandise, and general giftware (R. 3). The witness stated that previously he had owned a nursery school and children's camp and that this experience had given him a familiarity with the type of articles "that little children like to play with" (R. 5). Plaintiff's witness, who stated that he had been with that firm for 5 years, testified that Palmar Imports sells its merchandise at wholesale to hardware stores, department stores, and to variety stores, and that, in connection with sales by his company, he travels throughout most of the United States, "to almost every major city" (R. 4). Referring to item "13 T 150 Rubber Monkey"

(plaintiff's exhibit 1), Mr. Benton testified that he had been familiar with such item for 5 years, through purchases from the Orient and through sales at Palmar Imports. He stated that items such as plaintiff's exhibits 1 and 2 are sold to variety chains and that he had never sold them to toy jobbers (R. 8) ; that they are also available in tobacco novelty shops in every major city. The witness had seen plaintiff's illustrative exhibit 2 pinned to the lapel of a coat, "used as a joke." Plaintiff's exhibit 1 is used by placing it on a table and squeezing the bulb, which forces air through the tube into the airless arms (R. 10), generating the action. Mr. Benton further stated that exhibit 1 costs $9 a gross complete, and that the bulb and stem portion by itself may cost anywhere from $4 to $5 per gross (R. 14). The witness had seen exhibit 1 used along the coastline of California, Washington, and Oregon as well as in Chicago and New York. He then testified that the persons he had seen using plaintiff's exhibit 1 were adults and that adults were the chief users of such items (R. 17–18). In the opinion of the witness, there were several factors which would prevent an article such as plaintiff's exhibit 1 being used by children under 12 years of age, namely, that the involved item "could be harmful to a child who would stick it in his mouth" (R. 18), and further, that a child could cut himself with the wire contained in the article. Plaintiff's witness then stated that the item (plaintiff's exhibit 1) is too fragile to be used as a toy (R. 18).

On cross-examination, Mr. Benton stated that he has never observed children playing with articles such as plaintiff's exhibit 1. He stated, however, that the item in question is solely for purpose of amusement. The witness also testified that he has imported at least 200 gross of the involved article and has observed "at least a thousand people or more using it at this Chicago show during the period of 1962 and 1963" (R. 19) and that these people were either wholesalers or retailers purchasing for their own use or for sale purposes (R. 19). The witness stated that he had seen these items used along the west coast the same as in Chicago, "on the counter for demonstration and sales purposes." Mr. Benton then testified that he had never seen the articles used other than at the store where they were purchased (R. 20), but that he had made inquiries of a number of people, some 200 persons, purchasing such items, as to whether they were purchasing the items for themselves or for their children, and that it appeared that the "majority" of persons questioned "were buying [the article] to amuse themselves but would also amuse their children at the same time." Plaintiff's witness had no knowledge of whether the subsequent use of the item at bar was actually as stated by the purchaser (R. 21).

In the case at bar, plaintiff contends in the first instance that the involved article is not a "toy." In determining this question, it is

well settled that the classification made by the collector carries with it the presumption that he has found every fact necessary to sustain his classification. *E. I. du Pont de Nemours & Co.* v. *United States*, 27 CCPA 146, C.A.D. 75; *Novelty Import Co., Inc.*, v. *United States*, 53 CCPA 28, C.A.D. 872. Plaintiff, in the case at bar, assumes the burden not only of proving that the classification by the collector is incorrect but must also affirmatively establish the correctness of its claim. *Joseph E. Seagram & Sons, Inc.* v. *United States*, 30 CCPA 150, C.A.D. 227; see also *Bob Stone Cordage Co. et al.* v. *United States*, 51 CCPA 60, 65, C.A.D. 838. Specifically, the initial question, in the case at bar, is whether the involved merchandise is a toy within the statutory and judicially accepted meaning of that term. As defined in paragraph 1513 of the Tariff Act of 1930, the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or mental development. Accordingly, plaintiff has assumed the burden of establishing that at or immediately prior to the date of importation the article here involved was not chiefly used for the amusement of children. See *Wilbur-Ellis Co. et al.* v. *United States*, 18 CCPA 472, T.D. 44762.

The determination of chief use not only involves a territorial or geographical consideration, but also the quantity of the merchandise used. While our appellate court has held in this connection that the uncontradicted and unimpeached testimony of a single and credible witness may be sufficient to overcome the presumption in support of the collector's assessment and make out a *prima facie* case for the plaintiff, the evidence submitted by the plaintiff must be sufficient to clearly establish that at or immediately prior to the date of importation the articles in question were not chiefly used in this country for the amusement of children. *W. X. Huber Co.* v. *United States*, 19 Cust. Ct. 88, C.D. 1074. In our opinion, however, the testimony of plaintiff's witness is not sufficient to establish that at or immediately prior to the date of importation these articles were not chiefly used in this country for the amusement of children. In the case at bar, the record discloses that the familiarity of plaintiff's witness with the merchandise here involved was limited solely to seeing the merchandise purchased at certain discount stores and housewares and gift shows in Chicago and along the west coast. However, such instances did not familiarize plaintiff's witness with the manner in which these rubber monkeys were used by the ultimate users of the merchandise, but his familiarity was predicated solely upon the uses made by the wholesalers and retailers who purchased the merchandise at locations wherein plaintiff's witness was in attendance (R. 19–20). Plaintiff's witness did testify, however, that "the majority were buying it to amuse themselves but would also amuse their children at the same

time." (R. 21). This conclusion of plaintiff's witness falls far short of establishing that the involved articles were not chiefly used for the amusement of children.

It is settled law that samples are potent witnesses. *Marshall Field & Co.* v. *United States*, 20 CCPA 225, T.D. 46037. In our opinion, the sample of involved merchandise supports the classification made by the collector, rather than tending to uphold the contention of the plaintiff that these articles are not toys. A visual examination of the articles under consideration persuades us that these articles are the type of playthings which are enjoyed chiefly, if not exclusively, by children, albeit they may at times be used by adults for purposes of amusements. In this connection, it is noted that plaintiff in its brief maintains that plaintiff's exhibit 1 is too fragile and dangerous to be used by children, thus precluding a finding that they are "toys." However, a mere finding that certain articles are fragile and lack durability does not preclude their classification as "toys." In *United States* v. *Sheldon & Co.*, 14 Ct. Cust. Appls. 260, T.D. 41879, certain cheap and flimsy playthings, such as automobiles, banjos, sentry boxes, sleighs, etc., packed in packages of candy as favors or prizes were held by the court to be "toys" under predecessor paragraph 1414 of the Tariff Act of 1922. The court therein, at page 262, stated:

We can not agree, however, that the brittle character of the goods disqualified them as playthings for children. It is a matter of common knowledge that there are durable playthings and flimsy playthings, costly playthings and cheap playthings, but they are all toys and whether one class or another is purchased depends on what the child wants and the ability of the buyer to pay the price.

If a cheap, easily broken article be used by children as a plaything and is reasonably suitable for no practical or other purpose, is it just as much a toy as is a durable, costly article of the same kind. Cheap and flimsy playthings are *capable* of being used more than once and that they may be broken the first time they are used, does not preclude their classification as toys. * * * [Emphasis quoted.]

We have reviewed the various cases cited by the plaintiff herein in support of its contention that the involved articles are not "toys." However, without undue lengthening of our opinion herein, suffice to say that those cases involved merchandise unlike that here in issue, and the determination of the classification of the merchandise therein involved was based upon findings by the court that the articles involved were chiefly used for decorative effects or by reason of other like factors which established that the items in question were not chiefly used for the amusement of children. We do not find these factors present in the case at bar, and are of the opinion that, with respect to the merchandise at bar, plaintiff has not sustained its burden of proof.

In view of the determination herein made by the court that the plaintiff has failed to establish that the items here involved are not properly classifiable as "toys" within the contemplation of the tariff act, we deem it unnecessary to consider the claim of the plaintiff that these rubber monkeys are properly dutiable under paragraph 1537 of the tariff act, as modified, at the rate of 12½ per centum ad valorem as manufactures wholly or in chief value of india rubber, not specially provided for.

For the reasons heretofore advanced, we are of opinion and hold that the plaintiff, in this case, has failed to overcome the presumption of correctness attaching to the collector's classification of the involved articles under paragraph 1513 of the Tariff Act of 1930 as "toys." The classification made by the collector of the involved articles under paragraph 1513 of the Tariff Act of 1930, as modified, at the rate of 35 per centum ad valorem as "toys" is sustained. Accordingly, the protest, in this case, is overruled. Judgment will issue accordingly.